Ruffin, C. J.
 

 Those parts of the bill, which charge a misrepresentation to the plaintiff, Moss, as to his liabilities or concealment from him on that subject, or that payments were in truth made on the bonds with his name on them, which are the subjects of this controversy (except the sum of #4,051 10 which was applied to them) are, all, directly and satisfactorily denied. The cause therefore turns upon the rule of law, as to the application of indefinite payments. The defendant, Adams, stands in the shoes of his endorsers, Peck, Wellford & Co. as he took the bonds over-due ; and he is, of course, no worse off than they would be. The payments were made in 1842 and 1843, and they were finally applied on the 11th day of July, 1844, by the debtor and the creditor concurring.
 

 We do not find it any where said, that the debtor, if he fail to make the application at the time of the payment, can do so afterwards, although the creditor may riot then have appropriated it. We suppose he cannot: .for, by not
 
 *49
 
 exercising the power when he parted from the money, he allows it to devolve on the creditor, and submits to his exercise of it, if the latter will do it at all. The debtor, it would seem, could not therefore claim to resume the power. There could be no doubt, that the concurrence of both the parties in an application of payments
 
 ex post facto,
 
 would be effectual between them, although the rule was, that the creditor must exercise his power, that is, of his own motion, at the time of the payment, or within a reasonable time thereafter. For the law makes the application, on the failure df the parties to do it, on the presumption of the Ínteres/and intention of one or the other of the parties; and therefore it would give way tó an actual application by both of the parties, as furnishing direct evidence and superseding the necessity for presumption. That would, probably, be the rule of law, even where sureties were concerned. But, if the law were, that the debtor, or creditor must, when each acts by himself and upon his single right, apply the payment when it is made, it would be an interesting question, whether in equity those two parties could subsequently, by concurring in the application, prevent the application by the law, so as to affect the rights of sureties. It would seem that on principle the insolvency of the debtor t^ied his hands and made it his duty to let the law operate between his sureties and his creditor, as things stood upon the happening-of his insolvency. But we do not find it necessary to dispose of that question, as we believe the present case is to be decided against the plaintiff upon the rights of the creditor, independent of the assent of the debtor.
 

 It has been sometimes thought, that the creditor lost his option as to the application, unless he acted on it at the time of the payment. The doctrine of our law upon this subject, is supposed to have been borrowed from the civil law; in which the rules certainly were, that if neither the debtor nor the creditor elected at the time of payment, the law applied it, and did so upon a presumed
 
 *50
 
 intention of the debtor, and, therefore, according to his interest, and to the most burdensome debt: as, to that carrying interest or secured by a penalty, before one that was not; and when the debtor could have no interest, as where the debts were alike, the application was made to the elder. It may be remarked, then, that if this were a case in which the creditor had not effectually applied the payments, because done out of due time, yet the applications made here were just such as the law would have made, according to the rule of the civil law.' All the debts were secured alike, and drawing interest at the time of the payments ; and the debt of Bencine, secured by his own name alone, though due upon securities more recent, was in fact contracted a considerable time before any of the.others ; and, though the other two classes of securities were payable at the same days, and the bonds of Moss, Alexander and Ben-cine were given to Peck, Wellford & Co. before those of Bencine and Adams, yet the former class became Ben-cine’s own debt and payable by himself exclusively, after ■ he had given the notes in substitution for Bowen’s — he having purchased from Bowen before he did from Moss. But we are at liberty to pass by this point, also, for the same reason, that we did that respecting the concurrence of Bencine and Peck in the application in July, 1844. For,, although the common law may be indebted to the civil law for the leading rule, which gives the option first to the debtor, and then, in succession, to the creditor, and to the law ; yet it is certain, that the Roman law has not been followed throughout, but the English and American Courts have departed from it in several instances, and, indeed, reversed it, and allowedthe creditor to make his election long posterior to the payment, and after material changes of the circumstances of the parties ; and, in other instances, the law has applied pay- , ments according to the interest and presumed- intention of the creditor, as, for example, to the debt not bearing
 
 *51
 
 interest, or the one more precariously secured, or one barred by the statute of limitations or the like. This doctrine was discussed, and first particularly explained by Sir William Grant, in
 
 Devaynes
 
 v.
 
 Noble,
 
 1 Meriv. 528,
 
 Clayton’s case,
 
 570, 604. He did not conclusively decide any point on it; but he noticed the principal cases which had then been decided, and, although, as he remarked, they were not all reconcilcable, it seems sufficiently plain, that, in his opinion, the weight of the authorities and principle authorized the creditor not only to apply a payment to what debt he pleased, but to make the application when he thought fit; and, further, that, in the absence of express appropriation by either party, tlie presumed intention of the creditor is to govern, The last ease that had then been decided was that of
 
 Peters
 
 v.
 
 Anderson,
 
 in the Common Pleas, 5 Taun. 596, in which it was held, that, if not made specifically, the creditors may at any time elect that a payment shall retrospectively receive its application to the debt, for which his security was the worse. The old case of
 
 Meggott
 
 v.
 
 Mills,
 
 Ld. Ray. 287, and that of
 
 Dawe
 
 v.
 
 Holdworth,
 
 Peake N. P. 64, are there said by Chief Justice Gibbs to go on an exception founded on bankruptcy. Sinee that time, there have been a number of cases, which seem to settle the question definitely in England, and establish that the creditor majr make the appropriation at any time before suit brought.
 
 Bosanquet
 
 v.
 
 Wray,
 
 6 Taunt. 597.
 
 Bodenham
 
 v.
 
 Purchas,
 
 2 B. and Ald. 39.
 
 Simson
 
 v. Ingham, 2 B. and C. 65.
 
 Philpott
 
 v.
 
 Jones,
 
 2 Adol. and Ell. 41, and
 
 Mills
 
 v.
 
 Fowkes,
 
 5 Bingh. N. C. 455. In
 
 Philpott
 
 v.
 
 Jones,
 
 the plaintiff could not have recovered on one of his debts, which was for spirits sold on credit, contrary toa statute ; yet he was allowed to apply an indefinite payment to that debt; and Chief Justice Denman said lie might so apply it at any time. The same language is used by all the Court in
 
 Simson
 
 v.
 
 Ingham,
 
 except that Judge Best said, the creditor must appropriate the pay
 
 *52
 
 ment in reasonable time, and except that it was agreed, by all the Judges that it must be before action. In the case of
 
 Mills
 
 v.
 
 Fowkes,
 
 which is the latest that has fallen under our notice, all the other eases are brought forward; and it -was there held, that where one of two debts is barred by the statute of limitations, the creditor may subsequently apply a payment to that debt, and then recover the other. The old argument was revived again, that, where the creditor failed to make the appropriation at once, he could not do it, but the law did it afterwards, But Chief Justice Tindall replied, that the decisions were clearly the other way, and that the receiver had a clear right to apply a payment “ at any time before action.”
 

 Prior to those modern decisions, the questions arose in the Courts of this Country, and the doctrines were distinctly laid down, which have since prevailed in England. In
 
 The Mayor, &c. of Alexandria
 
 v.
 
 Patton,
 
 4 Cranch 317, Patton owed Ladd for goods sold'to him, and also for the proceeds of goods sold by Patton, as auctioneer, . lie made a payment, which Ladd
 
 ex post facto
 
 applied to the former debt, and then, as relator, instituted a suit against Patton and his sureties on a bond given to secure his fidelity as auctioneer. On the trial the jury was instructed, that, although Ladd might apply the payment which Patton had omitted to apply, yet that “ it must have been recent and before any alteration had taken place in the circumstances of Patton;” which denotes, that Patton had then become insolvent. The judgment was reversed in the Supreme Court, and Chief Justice Marshall in giving the opinion said, the error was in holding, that the creditor’s election was lost, if not immediately exercised. •It is not said in that case, that it may not be lost by any delay to make it.. But, if the creditor be not obliged to declare his option immediately, to what other period can he be restricted'? Theonlylimitationmustbethatlaiddownin the English cases; namely, suit brought. For when a person brings suit, he must be taken to bring it on his demand
 
 *53
 
 as it then stands, and he cannot subsequently change it. In accordance with which the Supreme Court also held in
 
 The United States
 
 v.
 
 Kirkpatrick,
 
 9 Wheat. 720, that the creditor could not elect at the trial or after suit brought. And upon the question, concerning the application to be mads by the law, where the parties omit, the same eminent Judge in 1810 laid it down in
 
 Field
 
 v.
 
 Holland,
 
 (5 Cranch 8, that it would be to the debt, for which the creditor’s security was most precarious.
 

 It follows from what has been said, that the payments were properly appropriated, in the first instance, to the debts for which the creditors hold only Bencinc’s own note and acceptance; and that the application by the creditors of the residue to the notes given by Bencine and Adams, is conclusive and cannot be controlled by the Court. It is important that the law should be settled on these points; and it is, perhaps, of more consequence that some certain rule should be established, than that it should be any oiie in particular — so that debtors may fully know the consequences of not availing themselves of the power of applying a payment when it is made, and allowing it to devolve on the creditor.
 

 Perhaps it had been well to adhere to the original rule of the civil law, as more simp] e in itself, easily understood, and in its uniform operation doing as much justice, upon the whole, as any others however modified. But, with no previous predilection for them, we find the exceptions to it, on the points involved in this case, so firmly established in the tribunals of the common law, that we have no choice but to adopt them also ; and possibly they were necessary to the advancement of credit in our more commercial ages, by affording to the creditor more facilities for securing himself upon the failure of his debtors.
 

 The injunction was, therefore, properly dissolved, and it must be so certified to the Court of Equity ; and the plaintiff must pay the costs in this Court.
 

 Per Curiam.
 

 Ordered to be certified accordingly.