H. D. MILLER v. W. M. WOMBLE.

(Decided March 1, 1898).

*Creditor and Debtor—Debts Secured and Unsecured—Running Account—Application of Payments.*

1. When there are two or more debts owing by a debtor to a creditor, the former may direct the application of any payment he makes; if he does not do so, the creditor may do so at his pleasure before bringing suit; if neither the creditor or debtor directs the application, the law will make it to the most precarious debt.

2. While the rule for the appropriation of payments on running accounts is that the first item on the credit side of the account will be applied to extinguish the first item on the debit side, yet it has no force against an understanding of the parties to the contrary.

3. Where M. took a mortgage on W's. crops to secure advances and thereafter made further advances under an agreement that the crops should be given to him and first applied to the settlement of

the unsecured account, and only a running account was kept covering all the advances and containing the debit and credit items; *Held,* that, when payments from the crops equalled the amount secured by the mortgage, the lien of the latter was not discharged thereby.

CIVIL ACTION, commenced before a Justice of the Peace, and tried upon appeal at December special term, 1897, of BERTIE Superior Court, before *Brown, J.,* and a jury. The plaintiff sued out his claim and delivery, and based his right to recover the property named in his affidavit upon the ground that he had made advances to the defendant, which were secured by defendant's crops, and that said debt due the plaintiff had not been paid. The defendant set up a payment of the debt. The following issues were submitted to the jury: "(1) What was the actual value of the property described in and taken under the claim and delivery proceedings in this action at the time of the seizure? Answer $49. (2) Is the plaintiff the owner and entitled to the possession of the property described in said proceedings? Answer Yes. (3) Does the defendant wrongfully detain the same? Answer Yes." No question is raised for the consideration of the Court on this appeal on the first issue. Evidence for the plaintiff: Lien bond from W. M. Womble to H. D. Miller, for the year 1896, covering the crop and property seized (Exhibit A). B. F. King testified. "I am bookkeeper for H. D. Miller. I showed Womble his account as it appeared on the books, and he did not raise any objection to it. He said it was all right and admitted its correctness. I told Womble in May that he had traded out his $75 secured by the mortgage. He asked us to let him have more goods, and said that he would pay the debt. Miller was called in, and said, 'Go ahead, and let Womble have further advances without any further mortgages.' I never

rendered any account to the defendant. There is but one account on our books against the defendant. There is no other account on our books against Womble except this (the witness here indicated the account afterwards put in evidence). We kept but one account against him, and on that I entered all the debits and all the credits as they appear on the account. When the $75 mortgage was traded out, the defendant said to plaintiff that he had a mortgage on all he had; that his intention was to pay his honest debts; that he wanted more goods; and that when fall came, and he brought in his produce, he wanted it applied to his account; and that he had ample to pay his mortgage, and what he was buying. He did not say what account it was to be applied to; did not say open account or secured account. There was but one account on the books. The credits were crops raised on the land described in the lien, and delivered to our store, amounting to $164." H. D. Miller testified: "When Womble had traded out his full $75 mortgage limit, he came to my store. I told him he had traded out his $75. He asked for more credit, saying that he had crop enough to pay all. He said that if I would advance him more to make his crop, he would deliver his crop to me, and that it should first be applied to the unsecured account last advanced,—that is, to the supplies advanced after his agreement,—until that was paid, and then to the crop mortgage account. I agreed to this, and advanced him, as requested, in all about $237.38. I paid his rent for him at his request, and charged it in that sum. I told him what the amount of his account was the day I paid his rent, and he raised no objection to it. This was November 27th. He said he had plenty to pay it, and would pay it. I had the payment made, amounting in all to $164.12, applied on my account,

MILLER *v.* WOMBLE.

viz. to the unsecured account advanced after said agreement. We kept only one account. Mr. King kept the books. In one column is charged against Womble what he got and what he paid out, and in the other column what we received." The defendant here moved to dismiss the action, as allowed by Chapter 106, Laws 1897, which the Court declined to do, and the defendant excepted and assigns such refusal as error. There was evidence from the defendant tending to show that at the time of delivering the cotton and peanuts, all of which were embraced within the lien, the defendant directed that the proceeds be applied to the mortgage debt. The defendant introduced the account on the plaintiff's book between plaintiff and defendant, showing a balance due of $25.58. The defendant requested the Court to charge the jury: (1) That, upon the evidence, the plaintiff cannot recover. Refused. Defendant excepted. (2) That it is the duty of the plaintiff to make out his case on the second and third issues by more than a preponderance of the evidence. Refused, and defendant excepted. (3) That it is the duty of the plaintiff to make out his case on the second and third issues by more than a preponderance of the evidence, because it is admitted that there was but one account, and the law applies the credits on the account to the first items, until all the credits are exhausted; and, as these payments were crops named in the mortgage, the law applies the property to the debt. It is the duty of the plaintiff to overcome the *prima facie* case made out by the law, which *prima facie* case is that the mortgage debt appears to have been paid, unless you find that a different agreement was made." Refused, because the prayer asked more than a preponderance on the second and third issues. Defendant excepted. The Court

charged, among other things, that the law applied this mortgaged property to the mortgage debt; that, if there was no agreement, then, upon the evidence, the mortgage is discharged, and the plaintiff cannot recover; that the burden of proof is on the plaintiff to show by a preponderance of evidence that the mortgagor actually consented that the mortgaged crops be applied to the unsecured advances, and that in consequence of such agreement they were so applied. There was a verdict for the plaintiff. Defendant moved for a new trial which was refused, and from the judgment rendered defendant appealed.

*Mr. R. B. Peebles*, for plaintiff.
*Mr. Francis D. Winston*, for defendant (appellant).

FAIRCLOTH, C. J.: When there are two or more debts, the rule governing the application of payments in this State, is:

1. The debtor may apply the payment to either debt at his pleasure.

2. If he fail to make the application, the creditor may do so at his pleasure.

3. If neither make it, the law applies the payment to the most precarious debt. The debtor must direct the application when he makes the payment, and cannot resume the power at any time thereafter. The creditor may make the application at any time before action is brought and not thereafter. These rules apply where there are more than one debt. *Moss v. Adams*, 39 N. C., 42; *State v. Thomas*, 33 N. C., 251. In *The Mayor, etc.*, v. *Patton*, 4 Cranch, 317, Chief Justice Marshall in reversing the judgment below said that "the error was in holding that the creditor's elec-

tion was lost if not immediately exercised." In the case before us, the defendant contracted with the plaintiff early in 1896 for supplies to the amount of $75 and secured the same by a lien on his crops, and in the fall when the amount was about exhausted, he, according to the plaintiff's evidence, applied for further advancements, saying that he had crop enough to pay all, and that, "if I would advance him more to make his crop, he would deliver his crop to me, and that it should first be applied to the unsecured account last advanced, that is, to the supplies advanced after his agreement, until that was paid, and then to the crop mortgage account. I agreed to this and advanced him as requested, in all about $237.38." Only one account, called a "running account," was kept, showing in paralled lines the debits and credits. The action is for the balance on the store book.

The defendant's position is that as there is only one account of the entire transaction, the rule of applying the first credit to the first item of the account, and so on, must be observed, and that when the payments equaled the amount secured by mortgage, the lien on his crop was discharged; and he requested the Court to charge the jury that the plaintiff must make out his claim by more than a preponderance of evidence, which was refused, and he excepted. The fallacy is in disregarding the agreement of the parties, entered into before any payments were made. Neither reason nor the authorities support the defendant's contention. "The rule for the appropriation of payments on running accounts is that the first item on the credit side of the account will be applied to extinguish the first item on the debit side of the account; but this rule has no force against an understanding of the parties to the contrary.

A merchant is not estopped from showing an understanding or agrement inconsistent with the deductions the law would draw from the face of his books, unexplained." *Mack* v. *Adler*, 22 Fed. Rep. 570; *Bancroft* v. *Holton*, 59 N. H., 141; *Smith* v. *Vaughan*, 78 Ala., 201; *Langdon* v. *Bowen*, 46 Vt., 512. "The law makes the application on failure of the parties to do it, on the presumption of the interest and intention of one or the other of the parties, and therefore it would give way to an actual application by both of the parties, as furnishing direct evidence and superseding the necessity for presumption. There could be no doubt that the concurrence of both the parties in an application of payments *ex post facto* would be effectual between them." This is the language of Ruffin, C. J., in *Moss* v. *Adams, supra.*

The motions of the defendant are disposed of in *Byrd* v. *Bazemore*, at the present term. There was no error in the view of the law applied by the Court below.

Affirmed.