CHARLES B. ROUSS v. W. H. KRAUSS.

(Decided May 22, 1900.)

*Dealings Between Merchants—Note with Surety as Collateral Security for Indebtedness—Continuing Guaranty for Future Purchases and Payments—Release.*

1. Where a continuing guaranty stipulated that the firm of Krauss & Clyburn would remit to plaintiff weekly 10 per cent per week of their open account of indebtedness to him, they having the privilege of ordering an equal amount of goods to the remittance sent, thus granting continuous credit running collaterally and equally with the remittance—the surety is not released because the payments of 10 per cent per week were not made and new goods were shipped in excess of the remittance.

2. The non-payment was not the fault of the plaintiff, and the defendant can not plead a release by his own wrong.

3. The rule of applying payments to the oldest indebtedness has no application when the understanding of parties is to the contrary. The jury having applied the credits to the debt due by the firm at its dissolution and which was covered by the contract of guaranty thereby reduces the liability of the defendant as guarantor—the credits would have been more properly applied to the indebtedness incurred for goods furnished after the dissolution occasioned by the retirement of Clyburn.

CIVIL ACTION upon a promissory note payable to plaintiff by F. A. Krauss and J. F. Clyburn, of the firm of Krauss & Clyburn, and their sureties W. H. Krauss and H. N. Clyburn; also upon a guaranty executed by same parties, tried before *Allen, J.,* at January Term, 1900, of UNION Superior Court.

There was verdict, also judgment, against all the defendants. W. H. Krauss, one of the sureties, alone appealed, claiming that he had been released by the conduct of the plaintiff. His grounds are reviewed and determined in the opinion.

*Messrs. Adams & Jerome,* for appellant.

*Messrs. Redwine & Stack,* and *Burwell, Walker & Cansler,* for appellee.

CLARK, J.  This is an action upon a note signed by F. A. Krauss and J. F. Clyburn (who were partners as Krauss & Clyburn), W. H. Krauss and H. N. Clyburn, for $1,300, to be held as collateral security for the indebtedness of said Krauss & Clyburn.  The said Krauss & Clyburn, with the above two sureties, signed a cotemporaneous agreement that said Krauss & Clyburn would remit 10 per cent per week upon the above indebtedness, and that said Rouss would permit the ordering of an equal amount of goods with remittance sent, and there is a stipulation that said Rouss could in his discretion grant extension of time to the principal debtor without notice to the sureties.  *Bank v. Couch,* 118 N. C., 436.  There was in fact no extension of time granted, but the defendant W. H. Krauss contends that he was released because the payments of 10 per cent per week were not made, and new goods were shipped exceeding the amount of the remittances, and therefore, the said surety was released. The non-payment of the weekly 10 per cent, however, was not the default of the plaintiff, but of the defendants, and W. H. Krauss' obligation was that he should be responsible if such payment was not made.  He can not plead a release by his own wrong.  Indeed, the contract of guarantee expressly provides that if "the said weekly payments remain unpaid as much as four weeks, then the said Rouss is authorized to proceed with the collection of the note."  The sale of more goods to the amount of remittance made was not a restriction upon the guarantee, but a privilege to the defendants.  The guaranty is of a line of credit of $1,300, a continuing guarantee (14 A. & E., 1140), and at no time did

it exceed that amount, and if it had the overplus would simply have been beyond the guaranty and unsecured by it, but that would not have released the guarantee as to the $1,300.

The defendant, however, contends that he is released because after the dissolution of the partnership, to a letter of F. A. Krauss, asking a release of J. F. Clyburn, the plaintiff replied: "There is no need of Mr. Clyburn being released from the guarantee given by the old concern as collateral. We, of course, would not look to him, if unfortunately anything should go wrong, the surety is the proper person. His name on the paper does not make it any stronger; in fact, we will not recognize it. We have already permitted you to assume the indebtedness, and that is sufficient. You may explain this to your partner, and it will cover the ground." If this had been an agreement to release, it was without consideration (*Bank v. Sumner,* 119 N. C., 591), but in fact, while it is not a blunt refusal, it is none the less a declination, though in rather diffuse and diplomatic style. Treating it, however, as ambiguous, capable of two explanations, the construction was a matter for the jury. There was clear and explicit evidence from the plaintiff and two of his head clerks, and not excepted to, that no release was ever made or intended. The jury found upon the issue of fact thus submitted to them: 1. "Did the defendant F. A. Krauss, with the consent of the plaintiff, assume the payment of the indebtedness of the firm of Krauss & Clyburn, upon which this suit is brought, and plaintiff cease further to regard J. F. Clyburn as debtor?" "No."

The jury further found in response to the second issue, "Did plaintiff accept remittances from Krauss & Clyburn of less than 10 per cent per week of the open account of their indebtedness, and did plaintiff extend credit to the said

Krauss & Clyburn for goods sold and delivered them in excess of the amount of their remittances on plaintiff on said debt?" "Yes." And thereupon the Court directed an affirmative response to the fourth issue, "Is defendant W. H. Krauss liable to the plaintiff?" This was a matter of law and was correctly held, for, as above said, the default in making 10 per cent weekly payments lay upon the defendant, who guaranteed they should be made, and the credits allowed Krauss & Clyburn at no time exceeded the $1,300, which the sureties guaranteed. In truth, the plaintiff, rather than the defendants, has cause to complain because the jury in response to the third issue have credited the defendants with $841.25 paid by F. A. Krauss after the dissolution of the partnership, in face of the uncontradicted testimony that such payments were cash payments exacted of F. A. Krauss for the goods bought by him after the dissolution. The rule applying payments to the oldest indebtedness has no application where the understanding of parties is to the contrary. *Miller v. Womble,* 122 N. C., 135. But the jury applied them to the debt of the firm, the balance recovered by the plaintiff in this action being only $192.32, instead of $1,011.25, which was due by the firm at the date of the dissolution, and which was covered by the contract of guaranty—leaving a loss to the plaintiff of the amount due by F. A. Krauss, after the dissolution, though the evidence was that the above $841.25 was applied for goods as he bought them. The jury having found that such payments were to go upon the firm debt, there is only the question left whether the $192.32 was released by action of the plaintiff, and the jury have found with the plaintiff as to that.